# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

EIGHT NORTHERN INDIAN PUEBLOS
COUNCIL, INC., et al.,

    Plaintiffs,

    vs.                                      Civil No. 06-745 WJ/ACT

DIRKE KEMPTHORNE, United
States Department of Interior, or his
predecessor-in-office;
UNITED STATES DEPARTMENT OF
INTERIOR;
UNITED STATES BUREAU OF INDIAN AFFAIRS;
JAMES CASON, in his official capacity as the
Acting Assistant Secretary of Indian Affairs for
the United States Department of Interior, or
his successor in office;
THOMAS DOWD in his capacity as Acting
Director for the Office of Indian Education
Programs, or his Predecessors and Successors-in-
office,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART PRELIMINARY INJUNCTION

    THIS MATTER comes before the Court upon Plaintiffs' Motion for a Temporary Restraining Order, and Plaintiffs' Motion for Preliminary Injunction, both filed August 17, 2006 **(Docs. 2 and 3)**. Following a hearing in which the Court made partial findings, and after further consideration of the parties' arguments, the evidence presented at the hearing, the applicable legal standards, and as explained in this Memorandum Opinion, Plaintiffs' motion shall be granted in part and denied in part.

## BACKGROUND

Plaintiffs are Indian Pueblos who want to stop Defendants from proceeding with a restructuring or reorganization of the Bureau of Indian Education ("BIE"), formerly known as the Office of Indian Education Programs ("OIEP"),[1] which is provided services and administrative support from the Bureau of Indian Affairs ("BIA"). The BIA is a federal agency within the United States Department of the Interior ("DOI") pursuant to 25 U.S.C.A. § 1 et seq. The BIE supervises tribal schools through its Education Line Offices ("ELO"), which are run by mid-level field managers known as Education Line Officers. There are two ELO's in New Mexico, a northern pueblo agency and southern pueblo agency.

Plaintiffs contend that injunctive relief is proper because Defendants did not engage in "meaningful consultation" as defined in the BIA's own policies governing consultation and coordination with Indian Tribal Governments, and envisioned under federal statute, namely 25 U.S.C. § 2011(b)(A). Plaintiffs also contend that the restructuring of the BIE will have an adverse effect on the tribal schools operated by the pueblos under grants from the BIA. Plaintiffs seek an injunction forcing the Government to return to the status quo of December 22, 2005, including changes in job responsibilities and reassignments. The Government's position is that BIE complied with consultation requirements under statute and BIA policy, and further, that the reorganization will allow for better management and supervision, and better communication with Congress in appropriating funding for Indian education, particularly in light of the Congressional mandates set forth in the No Child Left Behind Act, codified at 25 U.S.C. §§ 2001 et seq.

---

[1] The Court is not entirely clear as to the effective date when the OIEP became the BIE, but for purposes of this Memorandum Opinion and Order, the OIEP and the BIE shall be collectively referred to as the BIE.

**1.     The Hearing**

On August 29, 2006, the Court held a hearing over a three-day period in order to determine whether a preliminary injunction should be granted, and made partial findings at the close of the evidence.[2] The Court concluded that the evidence did not warrant an imposition of a disfavored mandatory injunction which mandated that the Government undo any restructuring which had been implemented since December 22, 2005.[3] The Court found that Plaintiffs had not satisfactorily met either the balance of harms or public interest factors which are required in order to obtain an injunction which essentially alters the status quo. Thus, Plaintiffs' motion for mandatory injunctive relief requiring the DOI to undo the restructuring and restore the BIE to the situation that existed on December 22, 2005 was denied.[4] The Court took under advisement whether Plaintiffs were entitled to a prohibitory injunction that would force the Government to stop the restructuring at its present point. For the following reasons, I now find that Plaintiffs are

---

[2] Because Defendants had been given notice of and appeared at the hearing, Plaintiffs' request for a TRO under Fed.R.Civ.P. 65(b) will be denied as moot.

[3] The function of a preliminary injunction is to preserve the status quo pending a final determination of the rights of the parties. Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir. 1980). Certain types of preliminary injunctions are disfavored: (1) a preliminary injunction that disturbs the status quo; (2) a preliminary injunction that is mandatory as opposed to prohibitory; and (3) a preliminary injunction that affords the movant substantially all the relief he may recover at the conclusion of a full trial on the merits. Dominion Video Satellite, Inc. v. EchoStar Satellite Corp., 269 F.3d 1149, 1156 (10th Cir. 2001). Plaintiffs' request to turn back the clock, so to speak, to December 22, 2005, would fall into the categories of both (1) and (2).

[4] Aside from the concerns expressed by the Court about the harm to the Government from having to undo the restructuring, the Court expressed concern that a mandatory injunction would inflict harm on Plaintiffs based on testimony from Pueblo Governors and other witnesses regarding the need to fill vacant positions in the two ELO's in New Mexico. Counsel for Plaintiffs, after conferring with her clients, stated on the record that if injunctive relief was granted to Plaintiffs, any such injunction should not preclude the Government from filling the vacant positions in the two New Mexico ELO's.

entitled to some preliminary injunctive relief, subject to the limitations set forth herein, which orders that the restructuring of BIE cease until the Government satisfactorily complies with its obligations of consultation with the tribes, as required under federal statute and BIA policy.

**2.     Applicable Statutes**

Under 25 U.S.C. § 2011(a), the BIA is required to "facilitate Indian control of Indian affairs in all matters relating to education" through "active consultation with tribes." § 2011(b)(1). "Consultation" means "a process involving the open discussion and joint deliberation of all options with respect to potential issues or changes between the Bureau and all interested parties." 25 USC § 2011(b)(2)(A). Interested parties (including tribes and school officials) shall be given an opportunity:

> (i) to present issues (including proposals regarding changes in current practices or programs) that will be considered for future action by the Secretary; and
>
> (ii) to participate and discuss the options presented, or to present alternatives, with the views and concerns of the interested parties given effect unless the Secretary determines, from information available from or presented by the interested parties during one or more of the discussions and deliberations, that there is a substantial reason for another course of action.

25 U.S.C. § 2011(b)(2)(B).

Pursuant to Executive Order 13175,[5] the BIA adopted a "government-to-government" consultation policy for proposed federal actions affecting tribes. BIA Consulting Policy. It includes the following definition of consultation:

> "Consultation" means a process of government-to-government dialogue between the Bureau of Indian Affairs and Indian tribes regarding proposed Federal actions in a manner

---

[5] The Executive Order describing "consultation"reads in pertinent part: "(a) Each agency shall have an accountable process to ensure meaningful and timely input by tribal officials in the development of regulatory policies that have tribal implications. . . ."

> intended to secure meaningful and timely tribal input. Consultation includes that Indian tribes are:
>
> 1.  to receive timely notification of the formulated or proposed Federal action;
>
> 2.  to be informed of the potential impact on Indian tribes of the formulated or proposed Federal action;
>
> 3.  to be informed of those Federal officials who may make the final decisions with respect to the Federal action;
>
> 4.  to have the input and recommendations of Indian tribes on such proposed action be fully considered by those officials responsible for the final decision; and
>
> 5.  to be advised of the rejection of tribal recommendations on such action from those Federal officials making such decisions and the basis for such rejections.
>
> Consultation does not mean merely the right of tribal officials, as members of the general public, to be consulted, or to provide comments, under the Administrative Procedures Act or other Federal law of general applicability.

BIA Consulting Policy. In determining whether Defendants complied with their obligations under 25 U.S.C. § 2011(a), the Court must construe statutes liberally in favor of Indians, with ambiguous provisions interpreted in their favor. Montana v. Blackfeet Tribe of Indians, 471 U.S. 759, 767 (1985) (canons of construction applicable in Indian law are based on the unique trust relationship between the United States and Indian tribes).

## DISCUSSION

To obtain a preliminary injunction, the moving party must establish four requirements: (i) a substantial likelihood of success on the merits; (ii) irreparable injury to the movant if the relief is denied; (iii) the threatened injury to the movant outweighs the injury to the other party under the TRO; and (iv) the TRO, if issued, is not adverse to the public interest. See Kikumura v. Hurley, 242 F.3d 950, 955 (10th Cir.2001); Walmer v. U.S. Dep't of Def., 52 F.3d 851, 854 (10th Cir.1995).

**1.      Success on the Merits**

A party is not required to prove its whole case at a preliminary injunction hearing. University of Texas v. Camenisch, 451 U.S. 390, 395 (1981). The injunction standard of probable success on the merits is not equivalent to actual success on the merits. Camenisch, 451 U.S. at 394; Northern Arapahoe Tribe v. Hodel, 808 F.2d 741, 753 (10th Cir.1987).  Rather, to demonstrate a substantial likelihood of success, a movant is required to present a prima facie case showing a reasonable probability that it will ultimately be entitled to the relief sought. Continental Oil Co. v. Frontier Ref. Co., 338 F.2d 780, 781 (10th Cir.1964).

Plaintiffs allege that BIE failed to meaningfully consult with the tribes as required by statute and BIA policy before adopting the restructuring plan.  In the consultation process with the pueblos, Defendants were required to satisfy federal statutes, as well as their own rules and policies.  See, Morton v. Ruiz 415 U.S. 199 (government obligated to follow their own rules and policies when making decisions that affect rights of individuals); Vigil v. Andrus, 667 F.2d 931 (10th Cir. 1982) (BIA's transfer of school lunch program invalid where BIA failed to engage in consultations with affected Tribe); Oglala Sioux Tribe, 603 F.2d 707 (8th Cir. 1970) (BIA's action procedurally defective because it was not made in accordance with the BIA's own procedure requiring consultation).

Three formal consultations took place with the different tribes over a three-year period.  I find that the Government met the first and third requirements of the BIA Consulting Policy, and thus Plaintiffs will not be able to show a likelihood of success on the merits with regard to these two requirements. The tribes were timely notified of the proposed Federal action and they knew

who the Federal officials were who were in charge of the proposed restructuring.[6]

Plaintiffs contend that they were not informed that the proposed restructuring could result in loss of funding to Indian schools. Plaintiffs were specifically concerned that their schools' early childhood development programs (including the "Baby Face" programs) were suffering funding losses or closing down because the money was being funneled to the restructuring effort. However, this contention is based on rumor and speculation spreading throughout the tribal entities, and not supported by any credible evidence. What the evidence does show is that the funding cuts which have affected Plaintiffs and other agencies of the federal government is a result of other Congressional spending priorities and not the result of the BIE restructuring process.

Plaintiffs also contend that they were never told that the additional $3.2 million being requested for reprogramming by Defendants to fund the restructuring was coming out of the Indian School Equalization Program ("ISEP") funds, and that the schools would be receiving this money were it not for the proposed restructuring. See, Pltffs' Ex. 20. However, it was clear from the testimony presented at the hearing that the $3.2 million was part of ISEP "adjustment funds" which are set aside for administrative or special projects, rather than the "formula funds" which are distributed to the schools and used by the tribes on a local level. Absent reprogramming, there is no entitlement to those administrative funds by Plaintiffs and other tribal entities.[7] Under the BIA Consulting Policy, the Government has no obligation to inform Plaintiffs

---

[6] James Casin held the position of associate deputy secretary of either BIA or OIEP at the time, and was apparently the "point" person in charge of the restructuring.

[7] Plaintiffs' Ex. 20 is a letter from the R. Thomas Weimer, Assistant Secretary of the DOI to Senator Charles Taylor, Chairman of the Appropriations Committee. In the letter, Mr. Wiemer indicated that the $3.2 million, if not reprogrammed, would be put to use as BIA saw fit. The money could be distributed either to establish new FACE (family and child programs) sites, or

7

of speculative impact by the proposed federal action. Thus, Plaintiffs would not likely prevail on a showing that Defendants failed to satisfy the second consulting requirement of BIA policy.

Plaintiffs have, however, shown a reasonable probability that they will ultimately be entitled to some form of injunctive relief based on the fourth and fifth components of the BIA Consulting Policy. The Government did take into account and fully consider some of Plaintiffs' recommendations in the restructuring. For example, the original plan to consolidate the northern and southern ELO's was changed to keep two separate ELO's in order to accommodate the Plaintiffs' concern with better service to the schools with two locations serving the northern and southern areas of the state. From the evidence and testimony presented at the hearing, it appears that most of the tribes and pueblos preferred that no changes be made in restructuring, and that the funding that was slated for use at the higher levels of management be used instead at the local school level. There is no way to know if Defendants fully considered this recommendation, because there is no documentation on the specific reasons for the Government's rejection of the Plaintiffs' recommendations and input on this issue. The December 22, 2005 form letter addressed to "Dear Tribal Leader" (Pltff's Ex. 10) generically acknowledges "guidance received from Indian Country," and sets out the status of the program and the different new positions envisioned in the restructuring. While the Court agrees with Defendants that Plaintiffs' recommendations could be characterized as very general suggestions, the December 22nd letter does not provide feedback to the tribes --even in general terms, consistent with general recommendations that were made-- as to why restructuring was necessary, or the reasons why

---

preferably to address student achievement issues regarding meeting Adequate Yearly Progress ("AYP") in light of the No Child Left Behind mandates. Mr. Weimer also noted that the BIA believed that existing FACE sites were "adequately funded."

funding could not simply be shifted for use on the local school level.

There is some evidence that Mr. Casin had several informal meetings with the pueblos sometime after December 22, 2005 to address Plaintiffs' concerns with the restructuring, but there is no documentation of either the purpose or substance of these meetings. I find there is a serious question as to whether the December 22nd letter and subsequent informal meetings constitute the government-to-government "meaningful consultation" required under federal statute and the BIA's own policy. As a result, there is a reasonable probability that Plaintiffs will be able to show a likelihood of success as to the fifth factor of the BIA Consulting Policy.[8] Plaintiffs have therefore shown a likelihood of success on the merits.

**2. Irreparable Harm**

In their briefs, Plaintiffs base the alleged irreparable harm on the adverse effect the restructuring will have on Tribal schools, and also Defendants' failure to consult prior to starting the process. Plaintiffs would not succeed on the merits with regard to any adverse effect on the Tribal schools. Considering that the overwhelming evidence indicates that the students in these schools have not been meeting their average yearly progress goals mandated by the No Child Left Behind Act, the schools may be harmed more by inaction. However, Plaintiffs have still shown irreparable harm on another basis. If a restructuring occurs without meaningful consultation, the

---

[8] The Honorable Karen E. Schreier, Chief Judge of the United States District Court, for the Southern Division of the District of South Dakota, recently issued a decision granting a preliminary injunction to Plaintiffs, who are tribes in South Dakota, based on similar facts. However, in that case, there was no issue concerning a consolidation of the Education Line Offices, as there is in this case. Also, the Government raised other legal arguments which are not at issue here. See, Yankton Sioux Tribe v. Kempthorne, --- F.Supp.2d ----, 2006 WL 2021695 (D.S.D.,2006). While this case is not precedent which this Court must follow, I find Judge Schreier's reasoning persuasive.

Plaintiffs will lose a procedural right which is guaranteed by federal law and BIA policy. Thus, I find that there is a threat of irreparable harm to Plaintiffs, which weighs in favor of granting a limited form of preliminary injunction.

**3.     Balance of Harms**

The Court previously recognized the harm that the Government would have suffered with the issuance of a preliminary, mandatory injunction that forced Defendants to undo any of the restructuring which has taken place since December 2005. However, the bulk of the funding for the higher level positions has not yet been approved by Congress, and so these positions have not been filled and cannot be filled until the funding is approved. Individuals who have already been hired for new positions, or moved in order to start these positions, would not be affected by an injunction freezing the restructuring in its present state. Moreover, Plaintiffs agree that the Northern and Southern ELO should have any vacant positions filed. Therefore, the balance of harms tips in favor of Plaintiffs, who may suffer the irreparable loss of procedural rights about the issuance of a limited prohibiting injunction.

**4.     Public Interest**

It is in the public interest that federal agencies comply with their own policies and with federal statutes. The federal statute relevant here requires that the BIA engage in active consultation with the Plaintiff and other tribal entities in matters related to Indian schools. Thus, I find that Plaintiffs have satisfied the last of the four factors necessary for the granting of a preliminary injunction.

**5.     Bond**

Rule 65(c) of the Federal Rules of Civil Procedure requires that, as a condition of granting

a preliminary injunction, the court must impose a bond or other security. Because a delay in the restructuring process also means a delay in further expenditures in the process, and because of the limited nature of preliminary injunction that shall issue, the Court finds that no bond should be required.

### Limitations on the Preliminary Injunction

As previously noted, the preliminary injunction that shall issue shall be prohibitory, as opposed to mandatory, in nature. Thus, the injunction shall not undo any BIE restructuring enacted prior to the entry of this Order. Moreover, Defendants shall not be limited in terms of filling vacant job positions in the two New Mexico ELO's. Additionally, the preliminary injunction shall not impose restrictions on Defendants beyond the exterior boundaries of the State of New Mexico.

The preliminary injunction shall dissolve once the DOI and/or BIA complies with statute and policy mandating government to government meaningful consultation with tribal entities. The Court will not dictate what Defendants must do to satisfy the consultation requirement mandated by statute and policy; however, the Court is of the view that something more is required of Defendants than a generic "dear tribal leader" letter.

Finally, the Court recommends that Defendants maintain some sort of record of what actions are taken to satisfy the consultation requirement in the event disputes arise over whether consultation requirement has been satisfied and thus whether the preliminary injunction is still in effect.

**THEREFORE,**

**IT IS ORDERED** that Plaintiffs' Motion for a Temporary Restraining Order (**Doc. 2**) is

hereby DENIED AS MOOT for reasons described above.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Preliminary Injunction **(Doc. 3)** is granted and a Preliminary Injunction is hereby ordered in the form and manner and subject to the limitations set forth in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE